UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOYCE E. KUZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 04-87-B-W |
| HANNAFORD BROS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDED DECISION ON DEFENDANT'S
MOTION FOR SUMMARY JUDMGENT**

Plaintiff Joyce E. Kuzman contracted hepatitis C in 2000.  When her employer, defendant Hannaford Brothers Company, subsequently learned that Kuzman was infected with hepatitis, it required her to wear two layers of latex gloves on her hands when handling seafood rather than one.  The parties are currently in agreement that Hannaford's safety measure was not "medically necessary" and Kuzman continues to work for Hannaford to this day.  Nevertheless, Kuzman now maintains that she was discriminated against on the basis of a disability because, she says, Hannaford regarded her as substantially limited in the major life activity of working and it was an adverse employment action for Hannaford to subject her to the indignity of "double gloving" and to suspend her for a short period of time due to her refusal to follow the double gloving directive.  In addition to this claim of discrimination, Kuzman also advances a retaliation claim based on the fact that she was disciplined for her refusal to follow Hannaford's directive.  Hannaford has moved for summary judgment on both claims and I recommend that the court grant Hannaford's motion.

**Facts**

The parties' summary judgment papers recite a number of general background facts that are largely undisputed. For purposes of the pending motion, the material issues are whether Hannaford regarded Kuzman as substantially limited in a major life activity of working[1] and whether Hannaford subjected Kuzman to an adverse employment action in retaliation for opposing a discriminatory employment measure. To determine whether there are any genuine issues of material fact in relation to these disputed points of law, I review the parties' competing summary judgment statements of material fact under the auspices of this District's Local Rule 56, as outlined in Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004).

Shortly after Kuzman contracted hepatitis C, word of her illness spread through the Hannaford store in which she works. Store associates were talking about her and were concerned about catching the disease or the possibility of it being transmitted to a customer. (Statement of Mat. Facts ("Statement"), Docket No. 22, ¶ 40.) Stacy Thompson, the Associate Relations Manager at the Ellsworth store, shared these concerns (id. ¶ 45; Opposing Statement of Material Facts ("Opposing Statement"), Docket No. 30, ¶ 44), but was also cognizant that Kuzman's hepatitis infection did not interfere with Kuzman's ability to perform the duties of her position as a seafood clerk (Statement ¶ 43). Thompson sought direction from individuals higher up the human resources chain of command and eventually she and Kuzman received instruction

---

[1] Kuzman concedes that her hepatitis C did not, in fact, substantially limit her ability to perform any major life activities. Kuzman also assents to the court simultaneously analyzing her ADA and MHRA claims based on the federal standard of what it means to be regarded as "substantially limited" vis-à-vis a major life activity. (Pl.'s Opp'n Mem., Docket No. 44, at 8-9.) This court recently certified to the Law Court the question of whether "the Maine Human Rights Act definition of 'physical or mental disability' found at 5 M.R.S.A. § 4553(7-A) require[s] a showing of a substantial limitation on a major life activity as does its federal analogue, 42 U.S.C. § 12102(2)(A)." Whitney v. Wal-Mart Stores, Inc., Civil No. 04-38-P-H (D. Me. Apr. 4, 2005), *available at* http://med1/opinions/Hornby/2005/.

that Kuzman was to "double glove" while handling seafood.  (Id. ¶¶ 52, 55; Opposing Statement ¶ 55.)

There is a distinct possibility that a seafood clerk's gloves and skin may be pierced by the scales and spines of certain fish or during the use of certain tools in the seafood department. (Statement of Additional Material Facts ("Add'l Facts"), Docket No. 31, ¶ 12; Reply Statement of Material Facts ("Reply Statement"), ¶ 12.)  Kuzman herself has experienced such cuts while working in the department.  (Add'l Statement ¶¶ 13-14.)  Several times between July and December in 2002, Kuzman was observed and reprimanded for wearing only one pair of gloves, in violation of Hannaford's directive.  (Statement ¶¶ 59-60.)  On perhaps as many occasions, Kuzman objected to the double gloving requirement when speaking with her supervisors, explaining to them that the requirement was unnecessary from a medical standpoint because hepatitis C can only be transmitted by blood-to-blood contact and complaining that she was being treated unfairly.  (Id. ¶¶ 61-62.)

At the end of October 2002, Kuzman gave Thompson a copy of her recent lab results and told Thompson that the lab results showed that there were no longer any traces of the virus in her system and that she therefore should no longer be required to double glove.  (Id. ¶ 66.)  On November 12, 2002, Kuzman's nurse practitioner also contacted Thompson by phone and told Thompson that the double gloving requirement was unnecessary.  (Id. ¶¶ 70-71.)  Thompson nevertheless informed Kuzman that the double glove requirement would not be lifted until Kuzman could get something in writing from her doctor.  (Id. ¶ 72.)  Meanwhile, the nurse practitioner also contacted Kuzman and cautioned Kuzman that it would be appropriate for her to double glove if she had an open cut on a hand.  (Id. ¶ 75.)  Despite Thompson's instruction that Kuzman continue to double glove until she could produce a doctor's note, Kuzman continued to

3

disobey the directive. (Id. ¶ 76.) According to Kuzman, she did so because she had been told by her nurse practitioner that there was no reason to double glove. (Opposing Statement ¶ 76.) After repeated failure to follow the directive or to produce a note from her doctor that the requirement was unnecessary, Hannaford suspended Kuzman for insubordination on December 5, 2002. (Statement ¶¶ 76, 79-81.) On December 10, 2002, Kuzman's nurse practitioner forwarded a note to Hannaford that indicated the double gloving requirement was unnecessary because Kuzman was not in a contagious state. (Id. ¶¶ 82-83.) Hannaford then offered to reinstate Kuzman on December 13, provided that she sign a "step 1" disciplinary warning slip that would be placed in her file on account of insubordination. (Id. ¶¶ 85-88; Opposing Statement ¶ 86.) Kuzman refused to sign the slip and returned home. The following day Hannaford informed her that she would be permitted to return to work without signing the slip, but that the step 1 slip would still be entered into her file. (Statement ¶ 88-90.)

     Hannaford gives employees three steps before the employee is at risk of termination. The step 1 had no impact on Kuzman's pay, hours or responsibilities, although it may be considered as a factor in relation to pay increases and future advancement. (Id. ¶ 88; Opposing Statement ¶ 88.) Despite the invitation to return to her job in the seafood department, Kuzman remained out of work until June 2003. (Statement ¶ 92.) According to Kuzman and her physician, Kuzman was unable to work because she was suffering from anxiety as a consequence of having previously been directed to comply with the double glove requirement. (Add'l Statement ¶ 45.) When Kuzman finally returned to the store she entered into a new position as a full-time cheese coordinator in the deli department, which position afforded her with a "level increase" and concomitant pay raise. (Id. ¶¶ 93-94.)

**Discussion**

A movant is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

**A.      Disability Discrimination**

Kuzman does not contend that she was, in fact, disabled within the meaning of the ADA. Instead, she contends that she was regarded as disabled and, more specifically, that she was regarded as "substantially limited in the major life activity of working." (Pl.'s Opp'n Mem., Docket No. 44, at 9.) According to Kuzman's opposition memorandum:

> Once perceived as being contagious with a dangerous disease, it is easy to establish that Mrs. Kuzman would be significantly restricted from performing almost any job. Once identified as contagious, Mrs. Kuzman would be unable to effectively work with co-workers who would fear having any contact with her. . . . . The fear and misapprehension of Mrs. Kuzman's condition was not theoretical. Instead, the evidence reflects that employees were continually voicing their concerns as to whether they would catch Mrs. Kuzman's virus. Once

5

>  perceived as a threat to the health of co-employees, Mrs. Kuzman was effectively
>  prevented from participating in the work place.

(Id. at 10-11.)  Although Kuzman cites some Supreme Court language reflecting that the "regarded as" claim was created by Congress over concern that "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment," Sch. Bd. of Nassau County v. Arline, 480 U.S. 273, 284 (1987), Kuzman's theory of her own case is not backed up by citation to any precedent decided on comparable facts.  Moreover, Kuzman's theory of her case appears to be incompatible with the factual record, which reflects that Hannaford viewed Kuzman as fully capable of performing all of the duties associated with the seafood position.

"A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the A[mericans with] D[isabilities] A[ct]."  Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002).  Because Kuzman maintains that she was regarded as substantially limited in the major life activity of working,[2] she must demonstrate that Hannaford viewed her as "unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."  Id.[3]  The record, being utterly devoid of such evidence, is incapable of generating a genuine issue of material fact to stave off Hannaford's motion for summary judgment on this claim.  Indeed, the record reflects that Hannaford viewed Kuzman as fully able to perform her

---

[2]  Again, Kuzman does not contend that she was disabled within the meaning of the ADA, only that she was regarded as substantially limited in the major life activity of working.  Thus, precedent in which courts have concluded that plaintiffs with hepatitis C were substantially limited in the major life activity of reproduction have no bearing on this case.  See, e.g., Powell v. City of Pittsfield, 221 F. Supp. 2d 119, 146 (D. Mass. 2002) (collecting cases).  Even if Kuzman did advance such an argument, she has not produced any evidence on which the court could base such a finding.

[3]  Kuzman "agrees with the Defendant that the analysis of her ADA and MHRA claims are the same for purposes of summary judgment."  (Opp'n Mem. at 8.)

6

job in the seafood department, provided that she did so while "double gloved." Wearing a single pair of gloves while engaged in food prep is simply not a major life activity. The mere fact that Hannaford regarded Kuzman as someone with a communicable disease does nothing to establish that Hannaford regarded her as disabled under the ADA. See, e.g., Reese v. American Food Service, 2000 U.S. Dist. LEXIS 14343, *22, 2000 WL 1470212, *8 (E.D. Pa. 2000) ("That defendant correctly regarded plaintiff as having [hepatitis C] does not show that he was regarded as disabled"). Because the evidence produced by Kuzman does not support her claim that Hannaford regarded her as substantially limited in the major life activity of working, summary judgment should enter in favor of Hannaford on Kuzman's discrimination claim.

**B.  Retaliation**

Kuzman contends that Hannaford's continued insistence upon double gloving and its suspension of her for refusing to comply was unlawful retaliation for protesting what she reasonably considered to be unlawful disability discrimination. (Opp'n Mem. at 15-16.) Hannaford attacks this contention on several fronts, but the gist of its argument is that the double glove requirement was not an adverse employment action and, thus, Kuzman's refusal to comply with the requirement was not protected activity. (Mot. Summ. J. at 11-12). I agree.

Pursuant to the ADA's anti-retaliation provision: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act." 42 U.S.C. § 12203(a). Similarly, the Maine Human Rights Act (MHRA) prohibits discrimination "against any individual because that individual has opposed any act or practice that is unlawful under this Act." 5 M.R.S.A. § 4633(1). The fact that Kuzman cannot succeed on her discrimination claim does not preclude her from succeeding with her retaliation claim. Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st Cir. 2003). To establish a *prima facie* claim

of retaliation, Kuzman must show (1) that she engaged in protected conduct, (2) that she was subjected to an adverse employment action and (3) that there was a causal connection between the adverse action and her protected conduct. Id. at 478.

Hannaford concedes that Kuzman was suspended for insubordination and Kuzman claims that her insubordination was her protected activity. (Mot. Summ. J. at 11; Opp'n Mem. at 15-16.) Therefore, I assume that Kuzman could meet the relatively low threshold set by the second and third elements of the *prima facie* test. Thus, the only remaining element of the *prima facie* test is whether Kuzman's opposition and insubordination was "protected activity" under the ADA and MHRA. In order to establish that her opposition was protected, Kuzman must demonstrate that she held a sincere and reasonable belief that she was opposing a practice that amounted to unlawful disability discrimination. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261 (1st Cir. 1999) (involving a MHRA retaliation claim premised on a violation of the Maine Whistleblower Protection Act); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also cf. Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) (involving a Title VII retaliation claim); Muehlhausen v. Bath Iron Works, 811 F. Supp. 15, 19 n.7 (D. Me. 1993) (same). Hannaford makes a somewhat tangential attack on the "reasonable belief" element with an argument that its legitimate concern over customer safety and employee compliance with reasonable safety directives overrides Kuzman's desire to object to a requirement that she merely dislikes complying with. (Mot. Summ. J. at 15, relying on Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222 (1st Cir. 1976).) Hannaford's analysis is designed to portray Kuzman's insubordination as straying into the realm of unacceptable disruptiveness (id.), but what I draw from Hannaford's analysis is, among other things, that it is Hannaford's position that its double glove requirement was manifestly prudent and non-discriminatory because it

8

allowed Hannaford an extra level of protection in relation to its duties to the public without subjecting Kuzman to a material modification to the terms of her employment and, therefore, it was unreasonable for Kuzman to believe that the double glove requirement amounted to unlawful discrimination. Paraphrased in that manner, I believe that Hannaford's argument is a correct one. Mere dissatisfaction, even extreme dissatisfaction, with an employer's directive does not render that directive an adverse employment action. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996); see also James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004); Griffin v. Potter, 356 F.3d 824, 830 (7th Cir. 2004). To constitute an adverse employment action, an employment measure must materially change the conditions of plaintiffs' employment. Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" Id. (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). The double gloving requirement simply was not an adverse employment action and it was unreasonable for Kuzman to conclude that it was. This is so because compliance with the requirement was not a material alteration of Kuzman's job. It did not impact her pay, benefits or responsibilities in any manner and there is no evidence that the act of wearing double gloves caused Kuzman to be subjected to hostility and ridicule by her co-workers, let alone that Hannaford condoned any such treatment of Kuzman. The record reflects only that Kuzman's co-workers came to know of her disease because Kuzman informed them of it (Statement ¶ 15) and that subsequently there was a "buzz" around the store concerning Kuzman's hepatitis, with employees expressing concern about their exposure to the disease (id. ¶ 40). There are other reasons as well why it was not objectively reasonable for Kuzman to believe that she was opposing an act made unlawful by the

ADA. Specifically, I conclude that it was not objectively reasonable for Kuzman to believe either that her hepatitis C infection substantially limited her *ability to work* or that Hannaford regarded her as so limited. The summary judgment record quite plainly reflects that Hannaford continually regarded Kuzman as able to work, albeit subject to the double glove requirement. Based on this simple fact, no reasonable juror could conclude that it was reasonable for Kuzman to believe that the claim she presents in this litigation fell under the auspices of the ADA. Accordingly, I recommend that the court grant Hannaford summary judgment against Kuzman's retaliation claim.

## Conclusion

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** Hannaford's motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: May 2, 2005